Good morning, Your Honors. May it please the Court, Morgan Russell for Petitioner Enele Tuifagalele. This petition for review concerns a motion to reopen immigration proceedings. Mr. Tuifagalele, in order to prevail on that motion, had to satisfy four requirements. The first two I don't think are at issue here. Those first two requirements are that the evidence had to be new and previously unavailable. The second is that the new country conditions evidence had to show a qualitatively different situation in Fiji. As I understand it, the BIA thought that the country report did not show a materially more dangerous circumstance for Tuifagalele. And Tuifagalele's witness, I think he was a New Zealand professor, said there was a material change in the country conditions, and the BIA just decided to go with the country report. Is that about right? Not exactly, Your Honor. So the BIA — so the first two requirements, I don't think there's an argument about it. There was a difference. The BIA denied on the third and fourth requirements that Mr. Tuifagalele had to make. That's materiality of the change to his particular case, which this Court has described as needing to be individually relevant due to showing he has to make. The final hurdle, the highest one, is showing prima facie eligibility for asylum. The BIA sort of recited the evidence that was attached to it. What I can see where they didn't really balance anything that's new is he says, you can tell by Googling my name that I petitioned for asylum, and I'm going to be in a whole lot more trouble back in Fiji because they're tougher on people who petitioned for asylum because it makes the country look bad. That was based on what the New Zealand professor said, but there isn't anything else that supports it. So I don't understand why the BIA has to accept it. Well, the BIA does have to accept it, because as this Court has — and by it, I mean the factual assertions in the expert report, the factual assertions in the other letters of support from the former Fijian ambassador to the United States. The regulation talks about affidavits. These weren't affidavits, if I remember correctly. Well, this Court has treated country condition reports, other expert reports the same as personal affidavits from a movement himself. It did so with respect to the standard of treating the factual assertions therein as true at this stage and less inherently unbelievable. There's a difference between country condition reports and an affidavit of, for example, the petitioner. Right. I think those are different kinds of evidence. What I'm saying is that this Court, in the Malti case which is cited in the briefs, in Hamui, H-A-M-O-U-I, Ninth Circuit case from 2008, in which it also credited as true expert reports and granted a motion to reopen in the CAT context on that basis, here also it's important to note that the Board did not deny on that basis. The Board's decision does not say we're going with the State Department report over the expert report. It said even the State Department report doesn't show a material change in circumstance. Even the State Department report does not show that he makes that his prima facie case. And I think accepting as true the factual assertions in the State Department report, which are not inconsistent with the expert report, I think they're very consistent. They paint a picture of a paranoid regime targeting the clients. Mr. Chase, could you summarize for me the new evidence that is qualitatively different from when he, his first hearing? Yes. So the only country conditions evidence in the first hearing was the 2004 State Department report. That describes, paints a basically rosy picture of conditions in Fiji in what the IJ described as a time of relative calm. Not rosy. Basically they say it stinks and it's stunk for a long time. No, no, no. Respectfully, that's not right. In 2004, the State Department said the government of Fiji generally respected human rights, generally respected freedom of the press, generally respected the prohibition on arbitrary arrest and detention. That's a 2004 report. As I recall, they also say that they have political prisoners, they detain people who criticize the regime. The conditions are poor when they do detain them. That's the 2011 report. That's the difference I'm talking about. The 2011 report says that the military routinely acts with impunity in detaining those deemed to be critics or opponents of the government, that once people are detained, they're beaten into detention to get forced confessions to this broad crimes decree that labels the crime of sedition any criticism of the government. That's the picture painted in the 2011 report. Now, how do those changed conditions between 2011 and 2004 relate to him? I think that's where the expert report really ties that together. And again, the assertions in the expert report, just as with the Freedom House country conditions report in Malti, the expert reports in the Hamui case, those assertions have to be taken as true here, partly because that's the rule about submissions submitted with a motion to reopen, and partly because the board didn't say it discredited them, and that's not the basis of the board's decision. Ginsburg. But the board didn't discuss the expert at all, right, the expert report at all? Right. So the board cites it as, you know, he cites the exhibit letter of the expert report submission, says its conclusion about the Department of State report not showing material change, and then says, moreover, he hasn't presented any other evidence or has presented no evidence that shows an individualized risk or a pattern or practice of persecution. Seemingly saying, moving on to the rest of his evidence, he hasn't shown anything else that shows materiality or a pernicious case. But that's just — it then goes on to say the board does that both in the previous paragraph of its decision and in that next paragraph, saying that his only evidence is of general unrest, of general strife in Fiji. And that's just a terrible mischaracterization of his evidence, which speaks specifically in the expert report, in the ambassador's letter, and even in the Department of State 2011 report itself about the government monitoring, targeting for detention, abusing in detention people who are perceived as critics or opponents of the government. The evidence, undisputed and to be taken as true here, is that Mr. Tuafegbele falls into those groups because of his — I don't really see why he falls into the groups that the experts describe as faring so badly when they go back. What got me here, I was looking for it, and it got me that in 4.32, the people who sought asylum and then went back or refused to go back were very high-level people like this, like former ministers. One former minister committed suicide in Australia when he was told he'd have to be sent back to Fiji. The deposed prime minister of Fiji said that there would be a great deal of risk to him, but this fellow was a non-com. He was a sergeant. I would just say — I'll try to save about a minute for rebuttal, if I still can. That's about a minute for me to answer your question. The expert report, Mr. Tuafegbele had received explosives training when he was in the Fiji Army back before he first came to the United States. He's — since his last hearing, has been involved in a pro-democracy group that has been very critical of the regime. That's undisputed. Statements in the submissions, again, to be taken as true. And the expert report explains that partly because of another more prominent military figure who'd gone abroad, been very critical of the regime, partly because of other sort of coup or insurrection attempts that had been led by former military officers and soldiers with this kind of sabotage, demolition, explosives training, were prime targets of suspicion for this paranoid regime. I think it ties very closely in that he falls into those groups that would be at high risk. You'll still have a minute, but I just want to ask, your briefs were filed over a year ago, over two years ago. I'm just wondering, is there any — are there any new country condition reports? Is there any evidence you'd be able to submit if we were to remand that would further bolster? You know, I — just out of curiosity, I Googled the other day. It seems like the same prime minister is still in power. And what I saw was that — references to still seeking to crush perceived or suspected insurrections, including arresting some military officers, things like that. But obviously the Department of Homeland Security would be able to file its own country conditions once it goes back to the IJ, which I think it must. Okay. Thank you, counsel. Good morning. May it please the Court, my name is Sarah Bird, and I represent the United States Attorney General. This Court should deny the petition for review because the Board did not abuse its discretion in denying Petitioner's motion to reopen. In order to show changed country conditions to justify the untimely motion to reopen, Petitioner, this Court has held that there has to be a qualitative difference in the — Help me with something on that. I was kind of expecting a sentence or two or a paragraph in the BIA report addressing the arguments made by the professor from the — I think it's the University of Auckland in New Zealand about people that seek asylum in New Zealand and Australia. Did I miss it? I didn't see it. No, they don't specifically address that. What do we do about that? What's the law and what has to be done and what are we supposed to do about it? What was the BIA supposed to do about it? The Board does address and mention Dr. Rotruva, the professor from New Zealand's report. It doesn't specifically address the fact that — Hold on. Where are you talking about in the BIA decision? They don't mention it by name. They mention it by tab. It's on the first page. Tab what? And do you remember where it says motion, tabs, B, C? Yes. They say, in addition, he has submitted material chronicling the instability and strife in Fiji since his last hearing. Motion, tabs, B, C, E, F. That's what you're — which one is it? It's tab B was, I believe. B, C, E, F. But that's not, you know, a total — No. Well, it does — In part. In part. It's a summary. I think it's enough to show that the Board looked at it. Okay. So let's assume that they did look at it. What's the law and what they have to do about it? Your opposing counsel says they have to agree with it. And I think that's not right. I think they can certainly say, well, well, this expert says this, the country report says that, and we think the country report is more likely to have it right. But they didn't say that either. And I'm wondering, just what is the law and what they have to — the degree to which they have to talk about it, if any? Yes, Your Honor. I think — I know it's not an affidavit. That this Court has held that they have to accept as true affidavits, but other evidence as well, unless there's some specific discussion. Sure. That's why they don't have to accept it as true. If the country report disagrees, they can go with the country. Right. And then they would have to explain why they weren't accepting it as true. And here — Now we're getting to my question. Okay. Here, they don't. I think they accept it as true, that in Dr. Rotruva's opinion, various groups face heightened risk. Part of the issue with Dr. Rotruva's expert report is that he starts way back with 1987 coup, and a lot of the information and the risk that he describes is actually not new, previously unavailable evidence. The relevant part to this fellow is he says that they're scared of former military coming back because there was a military coup and they're worried these guys will actually have the skills to cause trouble for us. That's right. He actually says that former military have been at high risk since 1987. There was a coup in 1987. And then he says that after the mutiny attempt on the military commodore's life in 2000 that resulted in some paranoia and even higher risk to former military. But that's all five years before the original hearing in this case. So that's not new, previously unavailable evidence. And that actually goes to the board's statement in their decision that the evidence doesn't show a material change in similarly situated former military, because before his original hearing around 2005 and in his evidence back when he was in Fiji, there was a risk, a high risk, according to Dr. Rotruva, and now there still is, there's not a material change for similarly situated. So the case is basically the high risk to military, however high it may have been, existed the first time. It did, according to Dr. Rotruva. And it's final, and there's no real change. And also the board. Wait a second. Yes. What about the fact that after his immigration proceedings in 2005, there was this 2006 coup that saw this change in leadership, which made things worse. And that's what's in this report that I think changes the circumstances from the prior proceedings. And that starts at about 5.3. And then he goes on. Since then is the step about why Mr. Tufekolele is in particular risk, because they're targeting those with engineering background, military engineering unit, technical knowledge, which can be used for sabotage. And he was trained in explosives, and those who have been involved in the pro-democracy movement overseas because of their campaign for international anti-Fiji sanctions, and he's been doing that. Yes, Your Honor. And so there is a change in country conditions as documented here with the 2006 coup and the 2009 abrogation of the Constitution. Right. And then he's in particular risk because of his activities here. That's what. Well, and that's. The only thing that bothers me, I know even if we remanded this, the BIA, like, you know, could still deny this. But I want to get to that standard in a minute. But I don't understand why they couldn't have just said what you're saying now. Like, you're saying to us what they should have said, and I'm sure you've thought about it. And, you know, they could say that, too, but you're making a much better reasoned argument. It appears in the BIA's. To summarize, they seem to say it more in broad strokes. Actually, just don't say it. They say this material does not reflect the existence of meaningful differences in the treatment of similarly situated political opponents or former military since the last hearing. I would also say with regard to what you pointed out, this change in country conditions, the closest he gets to individualized threat, which is something he has to show, is that paragraph in Dr. Retruva's report. But that's still not individualized. And as we pointed out in our brief, even taking that as true, the Department of State reports from 2004 and 2011 both say, both before his hearing and the 2011 one with his political prisoners, no reports of politically motivated disappearances, no long-term political detainees. So even taking it as true that Dr. Retruva, he says here he personally communicated with a number of former Fiji soldiers who now live in New Zealand. So he heard from people that live in New Zealand that there's this risk. But that, when taken as true that he heard that, but then also looking at the Department of State reports, which are highly reliable, which don't say that there's been a history or a pattern or practice of persecuting former military as they return, it simply wasn't enough to show an individualized risk to him that's materially changed and is... But how about his activities here in the United States? Yes, he's... How does that factor in? He's been involved in pro-democracy group here in the U.S. and he submitted evidence of that. But again, the 2011 Department of State report says that there are no reports of political prisoners or political long-term detainees. So one, it's not clear that the Fijian government knows about his activities. His evidence says that he was a member and he did some fundraising. But he's not been, that we know of, at any sort of high-level publicized activities. Okay, but so the BIA, it isn't just like open, arbitrary, abusive discretion standard. There's an actual standard, right? It's the new evidence must satisfy the standard of worthwhile to develop the issues further. Why isn't this at least enough to meet that standard? Well, worthwhile to develop the issues further is one way that it's been articulated. But it's often worthwhile. I think that it's also been articulated as a high standard to show this change in country conditions that the statute says that materially impacts his eligibility for asylum. And it's because he's essentially asking for a new trial on something that's already been decided. And his previous hearing came all the way up to this court, his original asylum claim. So he has to show that this change actually materially impacts his individual eligibility for asylum and gives him a prima facie eligibility in a way that didn't exist as of his 2005 hearing. I see that my time is up. Anyone have any other questions? Okay, thank you so much. I think you had a minute. Just briefly, Your Honors. On the issue that opposing counsel mentioned of long-term political prisoners or long-term detainees, that wouldn't be required for him to show that to meet the standard of persecution, which is what's at issue. So what is in the Department of State report, even that report alone about detaining those deemed to be critics, beating them into detention to obtain confessions under this broad sedition statute, that would be enough to constitute persecution. And all he has to show, as you pointed out, Your Honor, is a reasonable likelihood of getting to that 10 percent possibility before the IJ that constitutes a well-founded fear of persecution on account of political opinion, real or imputed. I think it's important to note again that the Board did not say that the evidence wasn't previously unavailable. It did not say that it was crediting the Department of State report over the expert report. Those things aren't the basis of the Board's decision and so can't be the basis for affirming by this Court. Thank you. All right. Thank you very much. The verdict of Lely v. Lynch is submitted. We will take up U.S. v. Lopez-Vivas.
judges: Kleinfeld, Wardlaw, Paez